UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRIAN D. STONE, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:16-cv-03536-TWP-MPB |
| NANCY A. BERRYHILL,[1] Acting Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Brian D. Stone ("Stone") requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying his application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). For the following reasons, the Court **AFFIRMS** the decision of the Commissioner.

### I. BACKGROUND

**A. Procedural History**

On November 6, 2013, Stone filed an application for DIB, alleging a disability onset date of July 1, 2012, which he later amended to July 16, 2013, due to his Crohn's disease, back pain, obesity, anxiety, and depression. The claim was initially denied on January 22, 2014, and again on reconsideration on March 12, 2014. Stone filed a written request for a hearing on March 17, 2014.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Commissioner Carolyn W. Colvin as the defendant in this suit.

A hearing was held before Administrative Law Judge John H. Metz (the "ALJ") on August 31, 2015. Stone was present and represented by counsel, Michael G. Myers. Medical experts, Mark O. Farber, M.D. ("Dr. Farber"), and James Brooks, Ph.D., testified at the hearing. Michael L. Blankenship, a vocational expert, also appeared and testified at the hearing. On September 10, 2015, the ALJ denied Stone's application for DIB. Following this decision, on October 1, 2015, Stone requested review by the Appeals Council. On October 26, 2016, the Appeals Council denied Stone's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. On December 30, 2016, Stone filed this action for judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**B.     Factual Background**

At the time of his amended alleged disability onset date, Stone was forty-six years old, and he was forty-nine years old at the time of the ALJ's decision. Stone is now fifty-one years old. He attended formal schooling through the eleventh grade, but he did not complete his high school education and did not earn a GED. Prior to the onset of his alleged disability, Stone worked as a tile setter and a landscaper.

The administrative record contains relatively few medical records and shows limited treatment was sought by Stone for his various impairments. He went to the hospital on January 21, 2010, because he was experiencing lower back pain. Stone underwent an MRI of his lumbar spine, which revealed mild to moderate degenerative changes with some disc bulges, disc space narrowing, and central stenosis ([Filing No. 13-7 at 4](Filing No. 13-7 at 4)–5). During the month of March 2010, he participated in approximately six sessions of physical therapy to strengthen his back and alleviate his pain ([Filing No. 13-7 at 7](Filing No. 13-7 at 7)–18).

More than three years later and soon after Stone had filed his application for DIB, on November 26, 2013, Andrew J. Koerber, M.D. ("Dr. Koerber"), performed a consultative examination on Stone. He reported to Dr. Koerber that he had Crohn's disease and lower back pain. He also reported that his back pain started in 2007 or 2008 and got progressively worse in 2010. Stone reported that he had been seen by spinal surgeons and pain management specialists, but he never had surgery because the surgeons thought surgery would not be helpful. He noted trying physical therapy but said that it caused more pain. He also reported having some spinal injections, which provided limited relief, and receiving chiropractic manipulations. Stone explained that his back pain caused him to have depression, and his pain is worse when he is sitting, standing, or walking. He also discussed with Dr. Koerber his Crohn's disease symptoms and his limited past treatment that had not been helpful. He noted a colonoscopy that he received in January 2011, which revealed polyps and Crohn's disease ([Filing No. 13-7 at 42](#)–43).

During the examination with Dr. Koerber, Stone reported that he could walk about one hundred feet, stand for five minutes, sit for five minutes, and lift about three pounds. The physical examination revealed decreased range of motion in the lumbar spine and shoulders with decreased supination in his left elbow, but with no other limitations in the upper and lower extremities. Dr. Koerber's examination also revealed tenderness in Stone's lower back. His strength in his extremities was normal at 5/5. Despite Stone's complaints of pain, Dr. Koerber noted that Stone was in no acute distress and demonstrated a normal gait and posture. He also could ambulate around the room at a normal pace without holding onto the wall, and he could get on and off the examination table without difficultly. Stone was not able to tandem walk, toe or heel walk, or perform a knee squat. *Id.* at 43–45. Dr. Koerber noted that Stone did not need a cane or walker to ambulate. Dr. Koerber provided a medical source statement, opining that Stone could sit, stand,

and move about for short periods and lift and carry fifteen pounds, but he would have difficulty kneeling/squatting. *Id.* at 45–46.

On December 27, 2013, x-rays of Stone's lumbar spine and shoulders were taken. The x-rays revealed some mild to moderate disc degeneration and mild lower lumbar facet arthritis. They also revealed mild osteoarthritis in both shoulders ([Filing No. 13-8 at 31](Filing No. 13-8 at 31)). A comprehensive metabolic laboratory test also was performed on December 27, 2013. The test revealed low alanine and aspartate transaminase levels, but all other levels were within normal range ([Filing No. 13-8 at 27](Filing No. 13-8 at 27)).

On June 24, 2014, Denise Bland, M.D. ("Dr. Bland"), provided a medical statement regarding Stone's physical abilities and limitations. Dr. Bland opined that Stone could stand/walk for fifteen minutes at a time for a total of sixty minutes in a workday. She opined that Stone could sit for fifteen minutes at a time for a total of two hours in a workday. He could occasionally lift five pounds and frequently lift less than five pounds. She opined that he could rarely bend or stoop and only occasionally balance. Dr. Bland opined that Stone suffered from severe pain and would need to elevate his legs during an eight-hour workday. She noted that his pain would frequently interfere with his attention and concentration, and it was likely that he would miss more than four days of work each month. Dr. Bland's opinion did not include any reference to clinical, objective, or laboratory testing or findings ([Filing No. 13-8 at 50](Filing No. 13-8 at 50)).

Stone saw Rachael Sanchez, N.P. ("Nurse Sanchez"), on December 31, 2014, with complaints of back pain radiating into his right leg as well as depression. He was using a cane. Stone rated his pain as 10/10 on the pain scale, but Nurse Sanchez noted that he was in no distress. Nurse Sanchez's physical examination revealed a decreased range of motion and tenderness in Stone's lower back, and he was prescribed medication for nerve pain and was referred to a spine

center for further treatment (Filing No. 13-8 at 62–63).  On June 23, 2015, Stone again met with Nurse Sanchez because of his back pain.  He noted his previous physical therapy and steroid injections that did not provide relief.  Nurse Sanchez again prescribed medication and referred him for an MRI and possible neurosurgery.  *Id.* at 56–57.  An August 26, 2015 MRI of Stone's lumbar spine revealed degenerative changes with some disc bulges, disc space narrowing, and neuroforaminal narrowing.  *Id.* at 70–71.

Regarding Stone's mental health impairments, the medical record indicates that on March 24, 2013, Stone was taken by the police to Community Hospital for crisis intervention after a fight with his girlfriend.  At the hospital, Stone reported a history of mood swings secondary to marijuana use.  He also reported a history of anger issues.  Stone was diagnosed with a general mood disorder and assigned a global assessment of functioning ("GAF") score of 45.  He was not admitted to the hospital and was released to go home, but he was encouraged to set up an outpatient appointment for mental health treatment (Filing No. 13-8 at 8–12).

On October 29, 2013, Stone went to Community Health's behavior health pavilion and reported a history of depression, anger issues, and chronic back pain.  He reported that he wanted to start talking with a therapist and get back on medication to help his depression. *Id.* at 12–13.

Stone visited with therapists on October 30 and November 4, 2013.  During the first visit, Stone reported having suicidal thoughts two nights earlier because of a fight with his girlfriend.  He admitted that he had anger issues and depression and noted that his father was verbally abusive.  He also reported that he did not trust anyone.  He discussed his Crohn's disease and back pain.  He was diagnosed with depression and anxiety and given a GAF score of 55.  It was observed that Stone had a depressed mood, good concentration, fair judgment and insight, and normal affect.  *Id.* at 14–17.

On November 7, 2013, Stone was seen for stress and anxiety. He reported a long history of depression and mental health challenges dating back to his teen years. He described past marijuana use as well as medications taken for his mental health. Stone also discussed his chronic pain, Crohn's disease, and anxiety. Upon examination, it was noted that Stone was alert and oriented with fair judgment and insight. He was in no acute distress but had a lousy mood. He was again diagnosed with depression and anxiety, and he was given a GAF score of 51. It was recommended that he continue receiving therapy and taking medication to treat his mental health impairments. *Id.* at 18–19.

Soon after he submitted his application for DIB, Stone underwent a psychological consultative evaluation with Nicole A. Leisgang, Psy.D. ("Dr. Leisgang"), on December 31, 2013. Stone reported to Dr. Leisgang that he suffers from depression, anxiety, chronic pain, and Crohn's disease. He reported that he has struggled with depression since his adolescence, and he attempted suicide as a teen, which led to psychiatric hospitalization. Stone also reported to Dr. Leisgang that he was taking psychotropic medication and receiving individual and group counseling. Upon examination, Dr. Leisgang noted that Stone was anxious and depressed. His thought processes were clear and logical. Dr. Leisgang diagnosed depression and assigned a GAF score of 55 ([Filing No. 13-8 at 32](#)–36).

On January 5, January 12, February 24, April 22, and June 18, 2015, Stone sought treatment and therapy for his ongoing depression and reported his continued struggle with depression, anxiety, and chronic pain. He was ambulating with a cane. Medications were again prescribed to address his ongoing mental health impairments. *Id.* at 57–62.

During the administrative hearing before the ALJ on August 31, 2015, Stone testified that he had been using a cane every day for about four months, but the cane had not been prescribed

by a doctor. He testified that he last worked in July 2013 as a tile setter. Before that, he cut grass for the Fisher's Park Department. He testified that he stopped working because of his chronic pain. Stone testified that he was receiving treatment for back pain, depression, and anxiety. Stone noted that he still drove a little bit. He testified that he could stand for ten minutes, walk less than a block with his cane, sit for twenty to thirty minutes, and lift only one pound. Stone explained that he takes care of his own grooming but cannot do household chores ([Filing No. 13-2 at 39](Filing No. 13-2 at 39)–54).

## II.     DISABILITY AND STANDARD OF REVIEW

Under the Act, a claimant may be entitled to DIB only after he establishes that he is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that meets the durational requirement, he is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments,

20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then his residual functional capacity will be assessed and used for the fourth and fifth steps. Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work in the relevant economy, given his RFC and considering his age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if he can perform any other work in the relevant economy.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Section 405(g) of the Act gives the court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh

the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold the ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III. THE ALJ'S DECISION

The ALJ first determined that Stone met the insured status requirement of the Act through December 31, 2015. The ALJ then began the five-step sequential evaluation process. At step one, the ALJ found that Stone had not engaged in substantial gainful activity since July 16, 2013, the alleged disability onset date. At step two, the ALJ found that Stone had the following severe impairments: Crohn's disease, low back pain, obesity, generalized anxiety disorder, and major depressive disorder. At step three, the ALJ concluded that Stone did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ then determined that Stone had an RFC to perform sedentary work with the following additional limitations:

> [He can] lift/carry less than 5 pounds frequently and 10 pounds occasionally; no operating foot controls; sit for 6 hours per 8-hour workday; stand for 2 hours per

workday; walk for 2 hours per workday; occasionally bend; never stoop, kneel, crouch, or crawl; occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; requires use of a cane; and occasional contact with supervisors, coworkers, and public.

([Filing No. 13-2 at 19](#)).

At step four, the ALJ determined that Stone was unable to perform his past relevant work as a tile setter or a landscaper because the demands of this past relevant work exceeded his RFC. At step five, the ALJ determined that Stone was not disabled because there were jobs that existed in significant numbers in the national economy that he could perform, considering his age, education, work experience, and RFC. These jobs included document preparer, lens inserter, and telephone clerk. Therefore, the ALJ denied Stone's application for DIB because he was found to be not disabled.

## IV. DISCUSSION

In his request for judicial review, Stone advances only one argument for remanding this case to the Commissioner for further consideration. He argues that the ALJ improperly discredited the opinion of Dr. Bland, a treating physician, and should have given her opinion at least great weight.

The medical opinion of a treating physician is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (citing 20 C.F.R. § 404.1527(d)(2)); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). "An ALJ who chooses to reject a treating physician's opinion must provide a sound explanation for the rejection." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). If a treating physician's medical opinion is not given "controlling weight," the ALJ must "consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests

performed, and the consistency and supportability of the physician's opinion." *Scott*, 647 F.3d at 740.

The ALJ gave Dr. Bland's opinion "little weight". The ALJ's full consideration and discussion of Dr. Bland's opinion is as follows:

> Denise Bland, M.D. provided a Medical Source Statement dated June 24, 2014 and opined that the claimant had the residual functional capacity to perform less than the full range of sedentary work and would be unable to sustain an 8-hour workday. However, this opinion does not reveal the clinical signs of laboratory abnormalities upon which the opinion was based. This medical opinion was given little weight because it is generally inconsistent with the objective medical evidence as a whole.

([Filing No. 13-2 at 22](#)) (internal citations omitted).

Stone argues that the ALJ erred in assigning only little weight, rather than great weight or controlling weight, to Dr. Bland's opinion because she was Stone's treating physician. Stone asserts that Dr. Bland opined he was not capable of sedentary work and was disabled, and this opinion was entitled to at least great weight. Stone argues that a treating source's opinion must be given special consideration, and there must be good reasons provided for rejecting the opinion. He argues that the ALJ failed to point out what evidence was inconsistent with Dr. Bland's opinion, and the ALJ did not provide good reasons for rejecting the opinion. Stone then lists the physical examinations, x-rays, and MRIs that support his diagnosis of lower back impairments, and he argues that Dr. Bland's opinion of disability is consistent with this objective evidence.

Stone also argues that the ALJ failed to adequately evaluate Dr. Bland's opinion because he did not discuss the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, or the consistency and supportability of the physician's opinion.

In response, the Commissioner argues that the ALJ more than adequately supported his decision with substantial evidence and a thorough explanation. The Commissioner points out that

11

the ALJ discussed the opinions of all nine medical professionals who provided opinions in this case. The Commissioner notes that Dr. Bland's opinion was the only opinion that found limitations incompatible with an eight-hour workday. The opinions of both state-agency medical consultants found that Stone could perform light work with additional limitations consistent with the ALJ's RFC finding. Dr. Koerber opined that Stone could lift up to fifteen pounds and sit, stand, and walk in a manner consistent with the ALJ's RFC finding. Dr. Farber, who testified at the hearing, opined that Stone was capable of sedentary work. The Commissioner points out that the psychological medical professionals also opined that Stone had no more than moderate limitations. All eight medical professionals disagreed with Dr. Bland's opinion that Stone would experience severe pain that would frequently interfere with his attention and concentration. The Commissioner asserts that all these opinions amount to substantial evidence with which Dr. Bland's opinion was inconsistent. Therefore, the Commissioner argues, the ALJ was justified in giving only little weight to Dr. Bland's opinion. The Commissioner additionally points to the various physical examinations and MRIs that showed only mild to moderate impairments, and this evidence provides even more substantial evidence to support the ALJ's determination.

The Court first notes that Stone's Brief only baldly asserts that Dr. Bland was Stone's treating physician. Nowhere in the facts and medical evidence sections of his Brief does Stone explicitly state or even suggest that Dr. Bland provided medical treatment or care to Stone. His only reference to Dr. Bland notes that she provided a medical statement on June 24, 2014. There is no indication in his presentation of the facts that Dr. Bland provided any medical treatment. A review of the administrative record shows only the one-page medical statement from Dr. Bland ([Filing No. 13-8 at 50](Filing No. 13-8 at 50)). This same medical statement appears in one other place in the record. *Id.* at 55. The Court cannot find any treatment notes from Dr. Bland in the record. The record suggests

that Dr. Bland might not be a treating physician, but instead, she simply provided a medical statement for Stone's disability application. If this is the case, Dr. Bland's opinion is not entitled to special consideration or controlling weight as Stone asserts.

Regarding Dr. Bland's opinion and the ALJ's review and discussion of that opinion, the Court points out that the medical statement consists of a one-page document with circle-the-answer responses. There is no explanation for any of the responses provided by Dr. Bland. There is no explanation of supporting facts or findings. There is no indication that Dr. Bland first conducted any testing, evaluation, or examination before providing her opinion. As the ALJ noted, Dr. Bland's "opinion does not reveal the clinical signs of laboratory abnormalities upon which the opinion was based." ([Filing No. 13-2 at 22](#).) In other words, the opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques," *Punzio*, 630 F.3d at 710, which is required in order to give a treating physician's opinion controlling weight. The ALJ also noted that Dr. Bland's "medical opinion was given little weight because it is generally inconsistent with the objective medical evidence as a whole." ([Filing No. 13-2 at 22](#).) In other words, the opinion is "inconsistent with other substantial evidence." *Punzio*, 630 F.3d at 710. The ALJ sufficiently discussed the other objective medical evidence and medical opinions, which supported the ALJ's determinations. The ALJ committed no error in his analysis and explanation of his treatment of Dr. Bland's opinion. Therefore, remand is not warranted in this case.

## V. CONCLUSION

For the reasons set forth above, the final decision of the Commissioner is **AFFIRMED**. Stone's appeal is **DISMISSED**.

**SO ORDERED.**

Date: 3/27/2018

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Michael G. Myers
mgmyers10@sbcglobal.net

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov